# In re HAVEN ELDERCARE, LLC, et al.,[1] Debtors.

## No. 07–32720 (ASD).

United States Bankruptcy Court,
D. Connecticut,
New Haven Division.

Feb. 13, 2008.

---

1. Haven Eldercare, LLC, Case No. 07–32720, Waterford Equities, LLC, Case No. 07–32719, Haven Health Care Center of Windham, LLC, Case No. 07–32721, Haven Healthcare Management, LLC, Case No. 07–32722, Haven Health Center of Cromwell, LLC, Case No. 07–32723, Haven Health Center of Rocky Hill, LLC, Case No. 07–32724, Haven Health Center of Danielson, LLC, Case No. 07–32725 Haven Health Center of Litchfield Hills, LLC, Case No. 07–32726, Haven Health Center of East Hartford, LLC, Case No. 07–32727, Haven Health Center of Jewett City, LLC, Case No. 07–32728, Haven Health Center Soundview, LLC, Case No. 07–22729, Haven Health Center of New Haven, LLC, Case No. 07–32730, Haven Health Center of West Hartford, LLC, Case No. 07–32731, Haven Health Center of Farmington, LLC, Case No. 07–32732, Haven Health Center of Norwich, LLC, Case No. 07–32733, Haven Health Center of Waterbury, LLC, Case No. 07–32734, Haven Health Center of South Windsor, LLC, Case No. 07–32735, Haven Health Center of Waterford, LLC, Case No. 07–32736, Haven Health Center of Rutland, LLC, Case No. 07– 32740, Lighthouse Medical Supply, LLC, Case No. 07–32741, Haven Health Center of St. Albans, LLC, Case No. 07–32742, Haven Health Care Trust II, LLC, Case No. 07–32743, Cromwell Crest Convalescent Home, Inc., Case No. 07–32744, Applegate Lane, Inc. Case No. 07–32745, Haven Health Center of Claremont, LLC, Case No. 07–32746 Litchfield Health Care Trust, LLC, Case No. 07–32747, Haven Health Care Center of Warren, LLC, Case No. 07–32748, Ferretti's Nursing Home, Inc., Case No. 07–32749, Haven Equities of Warren, Rhode Island, LLC, Case No. 07–32750, Haven Health Center of Pawtucket, LLC, Case No. 07–32751, Pawtucket Equities, LLC, Case No. 07–52752, Haven Health Center of Derry, LLC, Case No. 07–32753, Haven Health Center of Greenville, LLC, Case No. 07–32754, Haven Eldercare of New Hampshire, LLC, Case No. 07–32755, Haven Eldercare II, LLC, Case No. 07–32756, Greenville Equities, LLC, Case No. 07–32757, Hampton Equities, LLC, Case No. 07–32758, Haven Health Center at Seacoast, LLC, Case No. 07– 32759, Haven Health Care of Coventry, LLC,

Case No. 07–32760, Chelsea Equities, LLC, Case No. 07–32761, Coventry Equities, LLC, Case No. 07–32762, Haven Health Center of Chelsea, LLC, Case No. 07–32763, Haven Eldercare of New England, LLC, Case No. 07–32870, Haven Health Center Common Paymaster, LLC, Case No. 07–32873, Haven Eldercare of Connecticut, LLC, Case No. 07–32962, Waterbury Equities, LLC, Case No. 08–30134.

## MEMORANDUM ORDER ON MOTION SEEKING PROCEDURES FOR MONTHLY COMPENSATION OF PROFESSIONALS AND OTHERS

ALBERT S. DABROWSKI, Chief Judge.

### I. INTRODUCTION & BACKGROUND.

Before the Court at this time is the Debtors' *Motion for Entry of an Order . . . Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals and Committee Members* (Doc. I.D. No. 350) (hereafter, the "Motion"). The Motion was originally objected to by McKesson Medical–Surgical, Inc. (hereafter, "McKesson") (Doc. I.D. No. 419) and Springfield Food Service Corp. d/b/a PFG–Springfield (hereafter, "Springfield") (Doc. I.D. No. 424). At the tine of the hearing on the Motion on January 30, 2008, the Debtors' counsel announced that McKesson was not prosecuting its objection, but that Springfield was maintaining its objection, and standing on its papers.

Through the Motion, the Debtors seek to establish a procedure under which "professionals" and others—including, *inter alia*, "committee members"—(hereafter collectively, the "Professionals") may be compensated from estate assets on a monthly basis prior to court approval of their fees and/or expenses. More specifically, the Motion and proposed order submitted in connection therewith seek approval of a procedure under which, *inter alia*, the Professionals can be paid monthly for 80% of accrued fees and 100% of accrued expenses that are not objected to by any of a group of parties entitled to notice,[2] which fees and expenses must ultimately by allowed and approved by this Court every 90–150 days under Code Section 331, and which fees are subject to disgorgement to the extent they are not so allowed and approved by the Court (hereafter, the "Monthly Payment Procedure").

### II. DISCUSSION.

Section 331 plainly allows the Court some flexibility in determining the frequency of compensation of certain professionals and others—namely, it permits a *specific subset* of entities who are entitled to compensation awarded under Section

---

**2.** Those parties include the Debtors, the Debtors' counsel, the United States Trustee, counsel to Capital Source, counsel to Omega Healthcare Investors, Inc., counsel to General Electric Capital Corporation, counsel to Na- tionwide Health Properties, Inc., Conway, Del Genio, Gries, & Co., LLC and counsel to the official unsecured creditors' committee (hereafter collectively, the "Notice Parties").

330 to have that compensation also awarded on an *interim* basis "not more than once every 120 days ... *or more often if the court permits"*. Unfortunately for the Debtors, they have failed to meet their burden of persuading the Court that the Monthly Payment Procedure is consistent with the limited authorization of Section 331. Specifically, the Monthly Payment Procedure runs afoul of Section 331 by (i) including as participants entities not eligible for interim compensation and (ii) providing payment to the Professionals in advance of court approval without any showing of individualized hardship and the ability of such Professionals to respond to any order of disgorgement.

## A. Ineligible Participants.

█ The Motion does not clearly define the universe of individuals or other entities that would be entitled to utilize the Monthly Payment Procedure. The Motion and its accompanying proposed order use the capitalized term, "Professional", without providing a description of what specific entities fall into that class.[3] Interim awards of compensation under Section 331 are available to a limited and specific universe of entities, namely "[a] trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103". Despite this statutory limitation, the Motion requests monthly pay-

ment for entities outside the ambit of Section 331, to wit:

***1. Committee members.*** The actual and necessary expenses of the lay members of the official unsecured creditors' committee (heretofore and hereafter, the "Committee")—as opposed to Committee professionals—are entitled to treatment as administrative priority claims under Section 503(b)(3)(F). However the Bankruptcy Code does not contemplate that these Committee members will have compensation awarded under Section 330 or, for that matter, on an interim basis under Section 331.

***2. Patient care ombudsman.*** A patient care ombudsman appointed under Section 333 (heretofore and hereafter, "Ombudsman") is entitled to have compensation awarded under Section 330(a)(1), but is conspicuously absent from the universe of individuals entitled to *interim* compensation under Section 331.

***3. Ombudsman's attorneys and "medical operations advisor"*.** The Bankruptcy Code does not appear to provide for *direct* estate compensation for attorneys and/or others employed by an Ombudsman. Rather, the Code seems to contemplate that in the first instance the compensation of such entities should be the responsibility of an Ombudsman, who may then seek to have such expenses reimbursed under Section 330(a)(1)(B). However, even such indirect compensation

---

**3.** Although it does not explicitly describe a class of "Professionals", the Motion does, in various places, allude to certain entities connected with these cases which the Court presumes are the intended participants in the Monthly Payment Procedure, to wit: (i) the Debtors' general bankruptcy counsel (Moses & Singer, LLP); (ii) the Debtors' Connecticut/special counsel (Wiggin & Dana LLP); (iii) he Debtors' regulatory counsel (Murtha Cullina LLP); (iv) the Debtors' investment banker and financial advisor (Houlihan Lokey

Howard & Zukin Capital, Inc.); (v) the Patient Care Ombudsman (R. Brent Martin); (vi) the Ombudsman's counsel (Schotter stein, Zox & Dunn, Co., LPA and Coan, Lewendon, Gulliver & Miltenberger, LLC); (vii) the Ombudsman's "medical operations advisor" (MCR Martin, LLC d/b/a Healthcare, MCR); (viii) the unsecured creditors' committee's general counsel (Pepper Hamilton LLP); (ix) the Committee's Connecticut counsel (Neubert, Pepe & Monteith, P.C.); and (x) individual members of the Committee.

is not provided for on an *interim* basis under the terms of Section 331.

## B. Payment in Advance of Court Approval.

■ Although Section 331 permits a Court to award compensation on a time interval more frequent than every 120 days, there exists no statutory authority permitting compensation to be "advanced" without court approval. Nonetheless, several courts have permitted such advanced payment in particular Chapter 11 cases.

The leading reported case allowing such a fee advance procedure seems to be *United States v. Knudsen Corp. (In re Knudsen Corp.)* 84 B.R. 668 (9th Cir. BAP 1988). That decision and its progeny have little influence on this Court in the instant cases for the reasons stated in detail below. However, *Knudsen* does provide a framework for analysis of the issue at ban a four-factored template for determining whether a given case qualifies as one of the "rare" cases in which an advance payment scheme may be implemented, to wit—

    1.  the case is an unusually large one in which an exceptionally large amount of fees accrue each month;

    2.  the court is convinced that waiting an extended period for payment would place an undue hardship on the professional(s);

    3.  the court is satisfied that the professional(s) can respond to any reassessment; and

    4.  the retainer procedure is, itself, the subject of a noticed hearing prior to payment thereunder.

*See* 84 B.R. at 672–73. The following discussion examines each of these factors in greater detail.

### 1. The Magnitude of the Cases and Fees.

At present, the record in these jointly-administered cases does not support a finding that any of the *individual* cases for which the Monthly Payment Procedure is sought are "unusually large";[4] nor is it likely that the amount of professional fees to be allocated to any *one* of the individual Debtors' estates would be "exceptionally large".

■ Even assuming that it would be appropriate to assess the magnitude of these jointly-administered cases, or the professional fees/expenses generated within them, on an aggregate basis, this Court does not view the *mere* magnitude of a case or its professional fees as particularly germane to the question of the appropriateness of the Monthly Payment Procedure. What *is* potentially relevant to that question is the *relative* hardship that would be visited upon a *particular* professional in a *particular* case, regardless of the *absolute* size of the subject case or fees. That concept is embraced by the second *Knudsen* factor, discussed immediately below.

### 2. The Hardship Imposed upon the Parties.

■ This Court acknowledges, and the Bankruptcy Code contemplates, that there may be instances in which the rate and magnitude of accrual of professional fees in a given case could present an undue hardship for a particular professional if compensation is not considered by the Court and paid on a schedule that is more frequent than the presumptive 120–day interim fee schedule provided by Code Section 331. This may be true, for instance,

---

4.  It is not appropriate for this Court to engage, *sua sponte,* a legal fiction by treating these jointly administered cases as if they had been substantively consolidated.

where (i) the resources dedicated to a given case represent a particularly large proportion of a professional's total resources, and (ii) the professional's usual receipt of payment for services is materially more prompt that that available under the 120–day compensation scheme contemplated by Section 331.

The record before the Court at this time is insufficient to permit the Court to conclude that a 120–day compensation schedule would present a hardship to any[5] of the Professionals that are proposed to be participants in the proposed Monthly Payment Procedure.

### 3. Ability to Respond to Reassessment or Adjustment.

■ A prerequisite to any professional compensation scheme that permits interim fee *payment* to be made in advance of *allowance* is an *assurance* that the subject professional will be able to respond to any disgorgement order a rising from a court's subsequent *disallowance* of fees previously *paid* (hereafter, "Reassessment").[6]

As in *Knudsen,* the Monthly Payment Procedure's proponents here suggest that Reassessment risk is addressed and ameliorated by that procedure's provision of a 20% "holdback" in the monthly payment of fees not objected to by any of the Notice Parties. In the Court's opinion, a 20% fee "holdback", alone, is insufficient to assure

the Court that a given Professional can respond to a disgorgement order in the event of Reassessment.[7] The unstated premise of such a "holdback" is that the Court will never disallow more than 20% of fees that are not subject to objection by the parties. However, this Court has an independent duty to scrutinize thoroughly all professional fees, not just those objected to by parties-in-interest.

Because the risk of Reassessment is real, this Court must assure itself that under all circumstances each of the subject Professionals will be able to satisfy a disgorgement order *in full* on a *timely basis.* Unfortunately for the Debtors there is nothing on the record of these jointly administered cases which serves to inform the Court of the financial wherewithal of any of the Professionals proposed to participate in the proposed Monthly Payment Procedure. Likewise, none of the Professionals have offered to provide any alternative method of assurance, such as, *e.g.,* the posting of a bond or, in the case of attorneys, the placing of fee/expense payments in a trust account until such time as they are finally allowed.

### 4. Approval of the Monthly Payment Procedure.

This factor does not present an independent impediment to implementation of the Monthly Payment Procedure. This matter

5. It is necessary that hardship be established *individually* for *each* Professional that desires to participate in the proposed Monthly Payment Procedure.

6. Likewise, the Court is legitimately concerned with the ability of a given Professional to respond to an order that it disgorge monthly fees *even if allowed,* in the event that a given Debtor's estate proves to be administratively insolvent (hereafter, "Adjustment"). This Court recognizes that the mere *presence* of Adjustment risk is not salient in the present discussion since that risk is present even un-

der the 120–day scheme of Section 331. However, Adjustment risk is relevant to an assessment of the Monthly Payment Procedure by virtue of *degree—i.e.* he Adjustment risk that is always present for interim fee awards is arguably four times as acute under a monthly, as opposed to a 120–day, payment procedure.

7. These concerns are equally applicable to the risk that the Court may deny reimbursement of *expenses,* which are not subject to any "holdback".

has been fully heard on due and fair notice. Nonetheless, the Court concludes, on the current record, that the Monthly Payment Procedure is inappropriate for implementation in any of these jointly administered cases.

### III. CONCLUSION.

For the foregoing reasons, the Motion (Doc. I.D. No. 350) is **DENIED** without prejudice.

**IT IS SO ORDERED.**